IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                                                             No. CIV 11-908 RB/LFG
                                                             No. CRIM 06-1022 RB

JOSE MAURICIO VARELA,

        Defendant/Movant.

### MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

    1.     On October 11, 2011, Movant Jose Mauricio Varela ("Varela") filed a federal habeas motion under 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. [Doc. 1.] Varela filed a brief in support of his motion. [Doc. 2.] The brief, however, was not properly scanned and was, therefore, incomplete. Varela later corrected the filing by submitting the additional, missing pages. [Doc. 17.] On November 21, 2011, the United States filed its Answer. [Doc. 11.] On January 9, 2012, Varela was allowed to file a supplemental memorandum, and on January 17, 2012, he filed

---

[1]**Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the 14-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.** *See, e.g.,* **Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).**

a reply to the government's Answer. [Doc. Nos. 16, 20.] Thus, the § 2255 motion is fully briefed. [Doc. Nos. 2, 11, 16, 17, 20.] Varela currently is incarcerated at a Federal Correctional Institution in Lisbon, Ohio – "Federal Satellite Low Elkton." [Doc. 20, at 5.]

2.      In making its recommendations, the Court examined the pertinent pleadings, attachments, and transcripts in this civil matter and the related criminal case [No. CR 06-1022].[2] After carefully considering the pleadings, attachments, the sentencing transcript, argument by parties and the pertinent law, the Court recommends that Varela's § 2255 petition be denied. Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Varela is not entitled to relief, the Court concludes that no evidentiary hearing is necessary. *See* 28 U.S.C. § 2255(b); United States v. Gonzalez, 596 F.3d 1228, 1244 (10th Cir. 2010) (no basis to hold evidentiary hearing where "there were no relevant, disputed issues of fact that needed to be resolved").

**Background**[3]

3.      Pursuant to arrest and search warrants, "police officers found methamphetamine and two handguns inside a vehicle Varela was driving, and additional firearms, explosive-related items, narcotics, and drug paraphernalia" at his home. Varela, 586 F.3d at 1250. On May 10, 2006, Varela was indicted. He was charged with three counts [CR Doc. 15]: (1) possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); (2) carrying firearms during and in relation to a drug trafficking crime, in violation of 18

---

[2]The Court refers to pleadings in the criminal case, No. CR 06-1022, as CR Doc. __. Pleadings in this civil habeas proceeding are referred to as Doc. ___.

[3]The background facts are taken, in large part, from the Tenth Circuit's published opinion that addressed Varela's direct appeal – United States v. Varela, 586 F.3d 1249 (10th Cir. 2009), *cert. denied,* 131 S.Ct. 321 (2010). Some of the facts are taken from the pleadings in the criminal case.

U.S.C. § 924(c)(1)(A)(I); and (3) being a felon in possession of multiple firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Id.

4. At Varela's first trial, the District Court declared a mistrial;[4] following the mistrial, the District Court severed Count 3 from Counts 1 and 2. Id. Varela proceeded to the second trial on the two narcotics counts (Counts 1 and 2). That trial also ended in a mistrial, due to prosecutorial disclosure issues. Id. The Court granted the United States' motion to dismiss Counts 1 and 2, and on August 13, 2007, Varela proceeded to the third trial on Count 3, the sole charge being felon in possession of firearms. Id.; [Doc. 2, at 2]. A jury found Varela guilty of the possession of multiple firearms.

5. At sentencing, Varela's total offense level was calculated at a level 36, with a criminal history category of I. Thus, the advisory guideline sentencing range was 188 to 235 months' imprisonment. However, the statutory maximum sentence under 18 U.S.C. § 924(a)(2) is ten years, and accordingly, the advisory guideline sentence was 120 months' imprisonment. [Doc. 11, at 2.] The District Court sentenced Varela to 120 months' imprisonment, the statutory maximum. Varela, 586 F.3d at 1250.

6. Varela appealed his sentence to the Tenth Circuit arguing procedural error in the application of United States Sentencing Guidelines ("U.S.S.G.") used to calculate his base offense level. [Doc. 11, at 2.] The Tenth Circuit denied the appeal. Varela, 586 F.3d 1249. Varela filed a petition for writ of certiorari with the United States that was denied. [CR Doc. 192.]

---

[4]Varela claims the first mistrial was due to the Court learning about prejudicial comments made by prospective jurors. [Doc. 2, at 2.]

7.      Varela's federal habeas petition raises four Sixth Amendment ineffective assistance of counsel claims in relation conduct or omissions of three different attorneys[5] who represented Varela at different stages of the criminal proceeding. Jane Greek represented Varela at his preliminary hearing, arraignment, and plea hearing; Herman Ortiz represented him at each of his trials; and Leon Schydlower represented Varela at sentencing. [Doc. 11, at 3 n.1.] With respect to his federal habeas claims, Varela asserts that: (1) Attorney Greek was ineffective for failing to move to dismiss the indictment on grounds that neither state nor federal law prohibited Varela from possessing firearms; (2) Attorney Ortiz was ineffective for failing to present evidence at trial that Varela was not a felon under state or federal law and/or that Varela's civil rights had been restored; (3) Attorney Ortiz (and Greek) were ineffective for failing to move the Court for a judgment of acquittal because neither state nor federal law prohibited Varela from possessing firearms; and (4) Attorney Schydlower was ineffective for failure to argue at sentencing that Varela was eligible for a downward departure based on U.S.S.G. § 5H1 factors based on Varela's age and numerous medical or physical ailments. [Doc. Nos. 2, 16.]

8.      The government responds that Varela's first three claims, all of which focus on the question of whether Varela was a felon under state or federal law, are premised on a "flawed reading of federal law." Consequently, according to the United States, none of the attorneys provided ineffective assistance of counsel as there is no requirement to raise losing arguments. With respect to the fourth claim concerning U.S.S.G. § 5H1 factors, the United States argues that Varela failed to state what characteristics his counsel should have made the Court aware of under § 5H1. [Doc. 11.] While that may have been true at the time the government filed its Answer, Varela's later

---

[5]Varela became dissatisfied with the performance of his first two attorneys and asked the Court to appoint new counsel, which the Court did. [Doc. 2, at 2-3.]

supplemental memorandum [Doc. 16] identifies the factors he sought to have his attorney raise. The government asks that Varela's § 2255 motion be denied and dismissed.

## Analysis

9. Ineffective assistance of counsel claims are analyzed under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, *reh'g denied*, 467 U.S. 1267 (1984). To satisfy the <u>Strickland</u> requirements, the movant must prove that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id.</u> at 687. Second, the movant must show that trial counsel's deficient performance prejudiced him to the degree that he was deprived of a fair trial. <u>Id.</u> *See* <u>Byrd v. Workman</u>, 645 F.3d 1159, 1167 (10th Cir.) (explaining that the movant "must show both that his counsel's performance 'fell below an objective standard of reasonableness,' and that 'the deficient performance prejudiced the defense.'") (*relying* on <u>Strickland</u>, 466 U.S. at 687-88), *cert. denied*, 132 S.Ct. 763 (2011). If the movant is unable to show either "deficient performance" or "sufficient prejudice," the ineffective assistance claim necessarily fails. <u>Hooks v. Workman</u>, 606 F.3d 715, 724 (10th Cir. 2010).

10. In <u>Strickland</u>, the United States Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential. <u>Strickland</u>, 466 U.S. at 687. A court should not second-guess counsel's representation after an adverse verdict or sentence. An attorney's performance should be evaluated from counsel's perspective at the pertinent time, thereby eliminating any distorting effects of hindsight. A court must indulge a strong presumption that counsel's conduct was reasonable and could have been considered sound trial strategy. <u>Id.</u> To be constitutionally deficient, an attorney's performance "must have been completely unreasonable, not merely wrong." <u>Byrd</u>, 645 F.3d at 1168. And, to demonstrate prejudice, the movant must show that

5

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citation omitted).

I. **Alleged Ineffective Assistance of Counsel Claims Pertaining to Felon in Possession Conviction** (Claims 1, 2 and 3)

11. Varela's first three ineffective of assistance claims relate to his contention that his federal indictment should have been dismissed based on his reliance on New Mexico state law. More specifically, Varela argues that, in accordance with New Mexico law, his possession of a firearm was not illegal since his prior felony convictions occurred more than ten years ago. Thus, since he no longer was defined as a "felon" under New Mexico law based on the age of his prior convictions, Varela contends that his possession of firearms was not illegal. Accordingly, Varela argues his attorneys' failure to attempt to dismiss this charge constitutes constitutionally deficient performance of counsel that was prejudicial. [Doc. 2.]

12. In support of his position, Varela relies, *inter alia*, on New Mexico state law, *e.g.*, § 30-7-16(C) NMSA 1978, federal law, 18 U.S.C. § 922(g), and United States Supreme Court and Tenth Circuit authority, *e.g.*, Beecham v. United States, 511 U.S. 368 (1994) and United States v. Hall, 20 F.3d 1066 (10th Cir. 1994).

13. New Mexico state law provides, in part, that it is unlawful for a felon to receive, transport, or possess any firearm or destructive device in this state. § 30-7-16(A) NMSA 1978. The New Mexico Statutes define "felon" as a "person convicted of a felony offense by a court of the United States or of any state . . . thereof and:"

> (a) less than ten years have passed since the person completed serving his sentence or period of probation for the felony conviction, whichever is later;
>
> (b) the person has not been pardoned for the felony conviction by the proper authority; and

6

(c) the person has not received a deferred sentence; . . . .

§ 30-7-16(C)(2)(a)-(c) NMSA 1978.

14.     Both the government and Varela agree that because Varela's prior felony convictions in 1965 and 1976 were more than ten years old when he was convicted of the present crime under 18 U.S.C. § 922(g), Varela does not qualify as a felon for the purpose of firearm ownership *under New Mexico law*. [Doc. 11, at 4.] However, the United States argues that the length of time that New Mexico deems appropriate to prohibit Defendant from gun ownership does not trump Congress's determination under § 922(g), *i.e.,* "that, because of his state felony conviction, [Varela] may never again possess a firearm or ammunition that has traveled in interstate commerce." [Id.]

15.     Title 18 U.S.C. § 922(g)(1) states, as follows:

> It shall be unlawful for any person (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The parties do not dispute that Varela's earlier convictions resulted in terms of imprisonment that exceeded one year.

16.     However, relying on Beecham and 18 U.S.C. § 921(a)(20),[6] Varela argues that "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." Beecham, 511 U.S. at 369 (*citing* 18 U.S.C. § 921(a)(20) (the choice-of-law clause)). Varela then interprets the above-cited New Mexico law to mean he no longer is considered a felon in terms of the federal charge.

---

[6]Varela does not expressly refer to 18 U.S.C. § 921(a)(20), but it is assumed he relies on that provision of federal law as well. *See* statutory provision *infra* at ¶ 18.

17.     Varela also relies on United States v. Hall. In Hall, the Tenth Circuit reversed the defendant's conviction on the charge of possession of a firearm by a felon. Hall, 20 F.3d 1066. Hall contended that 18 U.S.C. § 922(g)(1) did not apply to him because, under Colorado state law, his civil rights had been restored and, thus, he had no prior crimes as defined by 18 U.S.C. § 921(a)(20). The Tenth Circuit observed that to determine if Hall was lawfully charged with violating § 922(g)(1), the court must consider (1) if Colorado had restored Hall's civil rights, and (2) if Colorado law prohibited Hall from possessing a firearm at the time of his arrest. Id. at 1069. Colorado law automatically invested the rights to vote, sit on a jury, and hold office to persons provided that they were not incarcerated or on probation. Thus, the Tenth Circuit held that under Colorado law, Hall's civil rights were restored and that his privilege to possess firearms also were restored, because his prior convictions were outside the ten year period. Accordingly, "Hall did not have a predicate 'crime punishable by imprisonment for a term exceeding one year,' as defined by 18 U.S.C. § 921(a)(20) . . . ." Id.

18.     For purposes of clarification, Title 18 U.S.C. § 921(a)(20) provides that–

> Any conviction which as been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Varela initially asserted that his civil rights were fully restored under New Mexico law. [Doc. 2, at 8-9.] In his opening brief, he argued that his voting rights were restored, that he previously was asked to serve on a jury in Hidalgo County, New Mexico, and "most importantly, his right to possess firearms had been restored." [Id. at 9.] The government contended, however, that New Mexico's decision to allow him to possess a firearm "does not function as a restoration of [his] civil rights

under § 921(a)(20). [Doc. 11, at 5.] In support, the United States relies on § 31-13-1(E) NMSA 1978, that provides:

> A person who has been convicted of a felony shall not be permitted to hold an office of public trust for the state, a county, a municipality or a district, unless the person has presented the governor with a certificate verifying the completion of the sentence and was granted a pardon or a certificate by the governor restoring the person's full rights of citizenship.

19.     Here, there is no evidence or contention that Varela's earlier convictions were expunged, set aside, or pardoned. Thus, the only question is whether Varela's civil rights were restored. In a later-filed pleading, Varela states that he "must concede that he fails the first prong of the test set [sic] by this Circuit in Hall [*i.e.,* restoration of civil rights], as New Mexico law prohibits him from holding public office. See: NMSA 1978 § 31-13-1(E)." [Doc. 20, at 2.] Clearly then, Varela cannot meet the requirement under § 921(a)(20) that his civil rights be restored. Varela argues instead that it does not matter as only the second prong in Hall must be satisfied – that New Mexico does not prohibit him from possessing firearms. [Id.] The Court disagrees as Hall required that two elements be met, not just one. Hall, 20 F.3d at 1069.

20.     Moreover, the government identified an unpublished Tenth Circuit case that dealt with this exact issue, which resulted in the Court's rejection of Varela's same position. United States v. Fuentes, 119 F.App'x 248 (10th Cir. Dec. 27, 2004) (unpublished).[7] In Fuentes, the movant, like Varela, brought a § 2255 proceeding, arising out of his conviction on two counts of possessing a firearm after a former felony conviction. Id. at 249-50. Similar to Varela, Fuentes argued that because his former New Mexico felony conviction was more than ten years old, New Mexico law

---

[7]While unpublished opinions are not binding on the Court, they may be cited for their persuasive value.

did not prohibit him from possessing firearms. Fuentes also relied on the definition of "felon" set out in NMSA § 30-7-16, although he argued violations of Ninth and Tenth Amendment rights in addition to ineffective assistance of counsel. The core arguments, however, are the same as those raised by Varela – that because New Mexico law did not bar possession of a firearm based on the age of the prior convictions, the federal firearms convictions could not stand. Id. at 250.

21. In Fuentes, the Magistrate Judge recommended denial of the § 2255 motion, and the Circuit Court agreed for essentially the same reasons set forth by the Magistrate Judge. Thus, the Tenth Circuit denied Fuentes a certificate of appealability ("COA"). Id. at 249-50. In so deciding, the Tenth Circuit reasoned:

> The fact that New Mexico law does not forbid possession of firearms by those convicted of felonies more than ten years ago does not preclude the federal government from doing so. *See* United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994) ("[I]f the defendant has been convicted of a felony under state law and has not had his civil rights restored for that offense, then the defendant can properly be convicted for possession of [an item prohibited by federal law] under § 922(g)(1) *regardless of whether that same possession is prohibited under the state's law.*")

Id. at 250 (emphasis added by Fuentes Court).

22. Here, the federal government is not precluded from forbidding possession of firearms by Varela, even if New Mexico law allows possession of firearms due to the age of Varela's prior convictions. In addition, there is no dispute that Varela was convicted of a felony under state law and that he has not had his full civil rights restored for that offense. Thus, he can be properly convicted for possession of firearms under 18 U.S.C. § 922(g)(1).

10

23. Varela's argument that his conviction under § 922(g)(1) should have been dismissed has no merit.[8] Consequently, his attorneys' failure to raise a losing or baseless argument does not demonstrate constitutionally defective performance by counsel nor could it show prejudice. United States v. Rushin, 642 F.3d 1299, 1311 (10th Cir. 2011) ("[c]ounsel is not required by the Sixth Amendment to file meritless motions) (citation omitted) (Homes, J., concurring in result), *pet'n for cert. filed* (Feb 23, 2012). *See also* United States v. Orange, 447 F.3d 792, 797 (10th Cir. 2006) (counsel's failure to raise meritless issue is not ineffective assistance); Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) ("[I]f the issue is meritless, its omission will not constitute deficient performance."); Fuentes, 119 F.App'x at 250 (because Fuentes' challenges lacked merit, his counsel was not ineffective for failing to raise them). Therefore, the Court recommends denial and dismissal of these claims.

**II.      Sentencing Claim** (Claim 4)

24. Varela's fourth claim asserts that at sentencing, his attorney was ineffective for failing to argue that Varela was eligible for a downward departure based on U.S.S.G. § 5H1 factors. [Doc. 1, ground four.] Varela's initial supporting brief [Doc. 2] did not set out the details of this claim. The United States argued in its Answer that the claim should be dismissed because of Varela's failure to state what characteristics he believed his attorney should have raised under § 5H1 factors. [Doc. 11, at 6.] In Varela's supplemental brief, however, he provides more detail for his claim. [Doc. 16, at 3-8.]

---

[8]Indeed, Varela's attorney at sentencing conceded in argument to the Court that counsel knew that New Mexico's law concerning the definition of a felon having been convicted in the last ten years "doesn't have any bearing on a federal conviction. . . ." [CR Doc. 181, at 9 (Sentencing Transcript).] *See also* [Doc. 2, Sept. 8, 2011 letter to Varela from Attorney Schydlower] (acknowledging Varela's argument that he was not a felon under New Mexico law but declining to file a § 2255 motion on his behalf for ineffective assistance of counsel on that ground).

25. Varela argues, *inter alia*, that under the 2010 version of the U.S.S.G., § 5H1.1 provides that "age . . . may be relevant in determining whether a departure is warranted . . . ." [Doc. 16, at 2.] Varela states it is clear that a downward departure from the 120-month sentence was warranted, given his "advanced age, coupled with his numerous medical ailments and physical limitations." [Id. at 3.] Varela was 60 years old at the time of his October 2007 Presentence Investigation Report ("PSR").

26. Varela also contends, that under the 2010 version of the U.S.S.G. 5H1.4, he was entitled to a downward departure based on his physical condition. He asserts that he "is confined to a wheelchair as a result of his debilitating back and spinal cord conditions," and, therefore, "falls squarely within the Sentencing commission's definition of a person who would qualify for a departure based upon § 5H1.4. . . ." According to Varela, his conditions requires "near-constant medical attention, a need that clearly makes his incarceration more costly and less efficient that home confinement." [Doc. 16, at 3.]

27. Varela claims that his condition and case fall out of the Supreme Court's and the Sentencing Commission's definition of "heartland cases, as Varela does not meet the typical stereotype of a person who is charged with being a felon in possession of a firearm." [Id. at 4.] Moreover, Varela states that when he was arrested, he was, "at least part of the time, confined to a wheelchair, was not prohibited from possessing a firearm under, at a minimum, state law, and at sentencing was found to have no criminal history points."

28. Varela argues that attorney Schydlower's failure to argue for a downward departure under his circumstances fell well below the objective standard of reasonableness and prejudiced him. It took Varela "all of five minutes of research to find a plethora of published cases in this Circuit where the District Court departed significantly from the applicable guideline range as a result of

various § 5H1 factors." [Doc. 16, at 5.] Varela cited two cases, one published and one unpublished, which are discussed *infra*.

29.According to the PSR, based on Varela's total offense level of 36 and a criminal history category of I, the guideline imprisonment range was 188 to 235 months. However, because the maximum term of imprisonment was 10 years, the guideline sentence was deemed to be 120 months, in accordance with U.S.S.G. § 5G1.1(a). Sentencing Guideline § 5G1.1(a) provides:

> Where the statutorily authorized sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.

U.S.S.G. § 5G1.1(a) (2005 Guidelines Manual).[9]

30.In United States v. Palma, the United States District Court explained:

> Under the Sentencing Guidelines, a district court must ordinarily impose sentences within the range that the applicable guideline specifies. "Each guideline attempts to anticipate a broad range of typical cases – a 'heartland' – that is representative of the circumstances and consequences of ordinary crimes of the type to which the guideline applies." "[D]istrict court may depart from the applicable guideline range" in only certain circumstances.

Palma, 376 F. Supp. 2d 1203, 1208-09 (D.N.M. 2005) (internal citations omitted). Still, in scenarios that are considered "unusual" or "atypical" of cases embodying the conduct that a sentencing guideline describes, the district court has sentencing discretion to depart from a guideline range, etc. Id. at 1209-10. In Palma, the court observed that a downward departure from a statutory maximum sentence could be permitted. Id. at 1218.

---

[9]The 2005 edition of the Guidelines Manual was applied in determining Varela's offense level computations and criminal history because it was determined that the 2006 edition of the Guidelines Manual would violate the *ex post facto* clause of the United States Constitution. [PSR, at 5, ¶ 17.] Varela's reliance on the 2010 version of the Guidelines Manual is misplaced because Varela was sentenced well before 2010.

31.     However, the District Court further observed that departures based on U.S.S.G. §§ 5H1.1 and 5H1.4 (age and physical condition) are "discouraged factors in determining whether a departure is warranted. Departures based on these factors are not proper absent extraordinary circumstances that take the case out of the heartland of cases." Id. (citation omitted).

32.     Contrary to Varela's argument that age is or might be a relevant factor in justifying a downward departure, at the time of Varela's sentencing, the pertinent 2005 version of the Sentencing Commission's Manual provided that "[a]ge . . . is not ordinarily relevant in determining whether a departure is warranted." U.S. Sentencing Guidelines Manual § 5H1.1 "Age (Policy Statement) (2005). The exception might be where the defendant was elderly or infirm and another form of punishment, such as home incarceration might be equally efficient and less costly than incarceration. Id. Similarly, the 2005 version provided that "[p]hysical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted." U.S. Sentencing Guidelines Manual § 5H1.4 "Physical Condition, etc." (Policy Statement) (2005).[10] The exception might be the presence of "an extraordinary physical impairment." Id.

33.     A sixty-year old, like Varela, is not considered elderly or infirm, sufficient to warrant a downward departure. *See* United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008) (when deciding whether to depart from an applicable Guideline range, a district court is specifically discouraged from considering a defendant's age), *cert. denied,* 555 U.S. 1202 (2009).

34.     The PSR noted Varela's physical condition as "defendant stands 5'7" tall, weighs 195 pounds." [PSR, at 17, ¶ 48.] Varela had a number of surgical scars on both shoulders and on his right

---

[10]Later versions of the U.S. Sentencing Guidelines Manual contained amended language allowing consideration of age and physical condition in deciding whether to allow a downward departure. *See, e.g.,* U.S. Sentencing Guidelines Manual, §§ 5H1.1, 5H1.4 (2011).

knee. Per Varela's account, he had been in an automobile accident in 1973, that resulted in spinal and neck injuries. He developed spinal stenosis and osteoarthritis as a result of his injuries and took a variety of pain medications, including Morphine twice daily. Varela was advised that he needed to have the discs in his neck fused. He stopped working in 1992 due to pain and had been receiving SSI for 15 years before his arrest. [Id.] Nothing in the PSR indicated that Varela was confined to or using a wheelchair at the time of his interview, although his medical conditions and problems were well-documented in the PSR. At Varela's sentencing hearing, however, his attorney stated that Varela was "a man who has some age on him, who is suffering from profound medical difficulties . . . . He's wheelchair-bound." [CR Doc. 181 at 9.] Given his medical conditions, Varela's attorney asked that the Court consider sending Varela to a federal medical center. [Id. at 10.] The Court stated it meant to recommend that Varela be housed at a medical center that was capable of dealing with his significant and various medical conditions. [Id. at 28.] Thus, counsel and the Court took into consideration Varela's age and medical condition in determining his sentence and location of incarceration.

35.     At least one district court has explained that the standards for a downward departure under § 5H1.4 (physical condition) "are strict and generally [] met only upon a showing that the Bureau of Prisons cannot accommodate the person's medical condition." Salas-Soto v. United States, 2004 WL 63494, at *2 (S.D.N.Y. Jan. 13, 2004) (unpublished) (citation omitted). That court further observed that the "standards for an ineffective assistance of counsel claim are also very strict, requiring the petition to rebut the presumption that counsel's conduct was within the range of reasonable professional assistance and to show that his counsel's conduct fell below 'an objective standard of reasonableness.'" Id. (citing Strickland, 466 U.S. at 687-89). In Salas-Soto, the

defendant alleged that he was "very sick and getting blind," but the court found those conditions insufficient, without more, to warrant a downward departure.

36.     In Grant v. United States, 2005 WL 1147416, at *4 (D. Del. May 16, 2005) (unpublished), the petitioner's "kidney dysfunction, heart enlargement and heart murmurs" did not demonstrate "the severity or kind [of medical problems] that distinguish[ed] him from others who suffer from chronic health problems." The court reasoned that it was aware of the petitioner's health problems at the time of sentencing, but there was no evidence to suggest that his illnesses were "extraordinary" sufficient to warrant a downward departure. Thus, because of the lack of exceptional circumstances to justify a downward departure, it was not unreasonable or deficient representation by his attorney to fail to move for the departure. Id. at 5.

37.     Here, the Court first observes that age and physical conditions are not normally relevant in deciding whether to allow a downward departure. Indeed, the pertinent 2005 Sentencing Guideline Manual discouraged consideration of such factors at the time of Varela's sentencing. In addition, Varela has not presented evidence that his age or physical condition are so unique or exceptional that they remove him from the "heartland of cases."[11] Nor did he demonstrate that the detention facility is unable to accommodate his medical needs and treatment.

38.     Moreover, the Tenth Circuit explained that while district courts "have broad discretion to consider individual characteristics like age[,] . . . [t]hat such a ground for a variance is available certainly does not . . . mean it is compelled." United States v. Lewis, 594 F.3d 1270, 1276-77 (10th Cir.) (citation omitted), *cert. denied*, 130 S.Ct. 3441 (2010). Under these circumstances, the Court does not find it was ineffective for counsel not to have asked for a

---

[11]One need not look far, unfortunately, to find many individuals with spinal stenosis, back surgery and disc fusions. They are not uncommon medical conditions.

downward departure based on Varela's age or physical condition. Varela presents no evidence that such a downward departure was compelled by his circumstances, that his attorney would have been successful, or that the government would have agreed to such a departure. Thus, Varela fails to demonstrate constitutionally defective performance or prejudice.

39. The Court examined the two cases cited by Varela in support of his position. In United States v. Colaiezzi, 2010 WL 5477154, at *2 (D.N.M. Dec. 16, 2010) (unpublished), the district court found that a downward departure under U.S.S.G. § 5H1.4 was appropriate.

> The Court has seen many cases and situations in which people mention their medical conditions, but the Court is convinced this is an extraordinary medical condition that does not fall in the heartland of cases. The Court concludes that [the defendant's] physical condition has significantly deteriorated and is concerned that the Bureau of Prisons is not likely able to adequately handle [her] physical condition. [The defendant] appeared in the courtroom for her sentencing in a wheelchair.

Id. at *2. While the cases, at first blush, might have a few similarities, they are readily distinguishable. In Colaiezzi, the defendant suffered from a progressive neurological disorder of an uncertain origin. She experienced muscle tremors, tremors in her hands and head, and had developed diffuse muscular pain. She was unable to walk without the aid of a walker. Her mother died of a similar neurological degeneration when the mother was in her mid-fifties. It appeared, based on the doctor's report, that the defendant might not have much time left. Id.

40. Moreover, Colaiezzi pled guilty, cooperated with the government, and the parties agreed she played the role of a minor participant. Id. The facts, here, demonstrate that Varela did not agree to cooperate with the government, nor was he found to be a minor participant. There is no medical evidence showing Varela's condition is terminal or that he might not have much time left.

41.     Varela also relies on United States v. Rausch, 570 F. Supp. 2d 1295 (D. Colo. 2008), for the proposition that he, too, is entitled to a downward departure. The facts in Rausch are also distinguishable. Among other things, Rausch suffered from end-stage renal failure and hypertensive nephrosclerosis. He had been on kidney dialysis since April 2003 and was found to have an aortic abdominal aneurysm that required open surgical repair. After exhibiting anginal symptomology, he underwent a three-vessel coronary arterial bypass. Of critical importance to the court, Rausch had been accepted for a kidney transplant. After his sentencing was continued, Raush was rushed to a hospital and diagnosed with an ischemic right colon. Surgery was performed and a portion of his colon was removed, requiring the use of a colostomy bag. Additional surgery was needed. The court concluded that Rausch's litany of serious medical impairments met the definition of "extraordinary physical impairment." Id. at 1304. Varela's physical condition, while impaired, is nowhere near a comparable "extraordinary physical impairment."

42.     The Court also acknowledges Varela's assertion that he does not meet the typical stereotype of a person who is charged with being a felon in possession of a firearm. But, the Court is unpersuaded. The documentation in the PSR, for example, indicates that upon searching Varela's home, agents seized–

> a Ruger, Model P85, 9mm pistol loaded with 15 rounds of ammunition . . ., a New England Firearms (NEF, Model R73 Ultra, .32 caliber revolver loaded with four round of ammunition . . .; a Herter's, Model Single Action .22LR, .22 caliber revolver . . .; an Arcadia Machine & Tool (AMT), Model Automag II, .22 magnum caliber pistol . . .; a Davis Industries, Model P-380, .380 caliber pistol, . . .; a Davis Industries, Model P-32, .32 caliber pistol, . . .; a Bryco Arms, Model Jennings 9, 9 mm pistol, . . .; an Iver Johnson, Model American Bulldog, revolver with unknown caliber and no serial number, which is believed to be an antique; a Marlin, Model 60SB, .22 caliber rifle...; a Marlin, Model 336, .30-30 caliber rifle without a stock, . . . and so on.

18

Agents also seized two electric blasting caps, 15 hand grenade fuses, one expended fuse, two plastic prescription bottles containing explosive, and another plastic prescription bottle containing at least three different smokeless powder explosives. Neither list is complete with respect to the items seized. Unquestionably, Varela's possession of these firearms and explosives falls within the definition of a "felon in possession of a firearm."

## Conclusion

43. The Court concludes that Varela failed to meet his burden of showing either of the required Strickland requirements with respect to any of his four ineffective assistance of counsel claims. He did not provide evidence sufficient to overcome the strong presumption that his attorneys' actions were reasonable, or that their conduct in failing to raise certain issues was "completely unreasonable." In addition, Varela did not show that there was a reasonable probability that, but for his attorneys' alleged unprofessional errors, the result of the trial or sentencing proceeding would have been different.

## Recommended Disposition

That all of Varela's ineffective assistance of counsel claims (counts 1-4) be denied and that this action be dismissed, with prejudice.

That under Rule 11 of the Rules Governing Section 2255 cases and 28 U.S.C. § 2253(c)(2), a certificate of appealability not issue because Varela failed to make a substantial showing that he has been denied a constitutional right.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge